## FANTON AND OTHERS *vs.* THE FAIRFIELD COUNTY BANK.

If a debtor has notice of the assignment of a *chose in action*, before a copy of a process of foreign attachment is left with him in service, or if the assignee, within a reasonable time after such assignment to him, notifies the debtor thereof, such assignment vests in the assignee the equitable title to said debt, so that it can not, as against the assignee, either be legally paid to the assignor by the debtor, or be attached in his hands, by any of the creditors of said assignee.

Whether, in the case of an assignment of a debt made under the act respecting the settlement of insolvent estates, originally passed in 1828, (Rev. Stat., 1849, tit. xiv., ch. 4,) a notice of such assignment is necessary in order to perfect it as against either the debtors, or creditors, or subsequent assignee of such debtor—*Qu ?*

In an action of *assumpsit*, the defendants pleaded in bar, that before the commencement of said action, they had been garnisheed by B, to whom the plaintiff was indebted in an amount greater than the debt for which said action was brought. The plaintiffs replied, that they had made an assignment of all their estate, under the aforesaid act, to L, before the copy of such process had been left with them, and that before such service the defendants had knowledge of said assignment. On the trial, the plaintiffs introduced evidence which conduced to prove, *prima facie*, his replication, and that said L also gave the defendants notice of the assignment within a reasonable time. The court thereupon rendered judgment of non-suit. Held, that such non-suit was improperly allowed, and that the same should have been set aside, and a new trial granted.

THIS was an action of *assumpsit* brought in the name of C. Fanton & Sons against the president, directors and company of the Fairfield County Bank.

The defendants pleaded the general issue, and also pleaded the following plea in bar.

Before the commencement of said suit, the plaintiffs were indebted to Edward C. Bissell, of Norwalk, in said county, in a greater amount than the debt in the plaintiffs' declaration contained, for which this suit is brought; and the said Edward C. Bissell, on the 23d day of March, 1852, prayed out a writ of attachment, to secure said debt of that date, signed by John A. Weed, justice of the peace, and directed to the sheriff of said county or his deputy, and returnable to the superior court then to be holden at Danbury, in and for said county, on the first Tuesday of October, 1852, in which writ said officers were directed to leave a true and attested copy of the same, at least fourteen days before the return day thereof, with the present defendants, as the agents, debtors, factors and trustees of said present plaintiffs. The officer who served said writ left a copy of the same with the present defendants, according to the requirements of said writ, and according to law, by leaving said copy with Thomas Warner, Jr., then long before, and still cashier of the defendants, according to the requirements of said writ. Said writ was duly returned to said court, and such proceedings were thereupon had, that at the said October term of said superior court, 1852, judgment was rendered in favor of the then plaintiff, to recover, of the then defendants, the sum of four hundred and sixty-three dollars and twenty-two cents, damages, and for the sum of twenty dollars and ten cents, costs of suit, as by the records of said court will appear. Execution was immediately thereupon issued by the clerk of said court, returnable in sixty days, directed to the sheriff of Fairfield county, his deputy, or either of the constables of Redding, in said county, and during the lifetime of said execution, to wit, on the 4th day of December, 1852, the officer who served said execution demanded of the present defendants the amount, due from these defendants to the present plaintiffs, to be applied in part payment of said execution. These defendants there-

upon paid to said officer the whole amount, which was then due and owing from the defendants to the plaintiffs, as they the defendants were by law bound to do, which was the same debt for which this suit was brought, and which is in the plaintiff's declaration contained.

The plaintiffs, in their replication, averred that said firm of C. Fanton & Sons, on the 5th day of February, 1852, made an assignment in writing to Alanson Lyon, of said Redding, of all their estate, both real and personal, and all their interest therein, except such estate as is by law exempt from execution, and all accounts and *choses* in action to them belonging, of every name and nature, and all their interest therein, in trust, for the benefit of all their creditors, in proportion to their respective claims, in pursuance of the statute law of this state, entitled " An Act for the Settlement of Estates, Testate, Intestate and Insolvent," (chapter 4th of the Settlement of Insolvent Estates for the Benefit of Creditors;) which said assignment in writing was then and there duly signed by the said assignors, sealed, and acknowledged according to law. On the same 5th day of February, 1852, said Lyon presented and lodged said assignment for record in the office of the court of probate in the district of Redding, to which the settlement of said estate appertained, accepted said trust and gave bond with surety, according to law, for the faithful performance of his duties, which bond was then and there accepted by said court and lodged on file, and which said estate is still in settlement in said court of probate, and the said Alanson Lyon still acting as sole trustee thereof; by which said assignment all the estate, both real and personal, of the said assignors, vested in the said Lyon as trustee thereof, as aforesaid, including the said sum of money in the declaration mentioned, which then was, and still is, the estate of the said C. Fanton & Sons. The said Edward C. Bissell, and the president and directors of the said Fairfield County Bank, well knew at the time, and before the copy was so left in service with the said bank,

that the said C. Fanton & Sons had assigned their estate as aforesaid, and that said sum of money, in the declaration mentioned, was duly inventoried and presented by said trustee to said court of probate, and by said court accepted and ordered to be recorded in due form of law.

The plaintiffs further replied, that the said Lyon, as such trustee, procured the appointment of commissioners on said estate, who gave notice of the times and places at which they would receive claims against said estate; and that the said Edward C. Bissell presented said claim on which said judgment was rendered, as alleged in said plea, to said commissioners, and the same, amounting, including interest, to the sum of four hundred and fifty-nine dollars and fifty-six cents, being the full amount of the same, was included in the report of said commissioners, was presented to and accepted by said court of probate, and has never been appealed from or set aside. The plaintiffs further said, that said trustee, on or about the first day of April, 1852, as soon as the same came to his knowledge, demanded said money of said bank, and said bank refused to pay the same to him.

This replication was traversed by the defendants, on which issue was joined.

Upon the trial, the plaintiffs offered evidence to prove, that on the 8th day of October, 1851, Bradley Burr, a stage-driver, delivered to T. Warner, Jr., cashier of the Fairfield County Bank, at the banking-house of said bank, in Norwalk, three hundred and fourteen dollars and sixty cents, which, the said Burr then and there informed said Warner, was to pay a note of C. Fanton & Sons, which it was expected would be presented for payment at said bank on that day; that no such note was presented, and said money lay in said bank, till the 17th day of January, 1852, in the same condition in which it passed out of the hands of said Burr, and was, on said 17th day of January, passed by said Warner to the credit of said C. Fanton & Sons, on the books of said bank. In the month of February, 1852, on the 5th day

thereof, said C. Fanton & Sons made an assignment in trust for the benefit of their creditors, to Alanson Lyon, under and in pursuance of the provisions of the statutes of 1828, relating to such assignments.

The record, set up in the special plea of the defendants, was read, in pursuance of the profert thereof, consisting of the writ of foreign attachment, with the officer's return, the judgment obtained thereon, and the execution issued accordingly, with the officer's return.

The plaintiffs' evidence consisted of the testimony of said Bradley Burr, (who testified to the delivery of said money as aforesaid,) of said general assignment, and of the following witnesses.

1. Alanson Lyon testified as follows: " I made demand of the bank for the money from the 1st to the 3d of April, 1852. Saw Mr. Warner, the cashier there, in the aforesaid banking-house. I asked him if there was money there to the credit of C. Fanton & Sons. He said there was three hundred and fourteen dollars and sixty cents. I think he said it was sent there to pay a note. He said the money was sent there the latter part of October previous. I told him I demanded the money, because I was trustee of C. Fanton & Sons: he said he was well aware of that, but that he could not pay it, because the bank was factorized. Several of the directors were in the bank; Ebenezer Hill was there; I think Wm. K. James, but won't be certain; I think Mr. Isaacs was there. An assignment was made to me on the 5th of February, 1852. [The witness here presented a paper purporting to be an additional inventory of the estate of C. Fanton & Sons.] I carried in this additional inventory, May 31st, 1852. I heard, in the first place, that there was money in the bank, and soon after that, I went and demanded it. Soon after that, I inventoried it in this additional inventory. I had returned the first inventory before the factorizing suit. I inventoried the money soon after I knew it was in the bank."

2. Thomas Warner testified as follows: "I am cashier of

the Fairfield County Bank.   On the 28th of October, 1851, there was left by Mr. Burr, of Redding, a stage-driver, three hundred and fourteen dollars and sixty cents, which he stated was for a note due on that day, made by C. Fanton & Sons, payable at the Fairfield County Bank.   The note was not there.   I made a memorandum and laid it aside with the money.   The note did not come, and on the 17th of January, 1852, I placed the money to the credit of C. Fanton & Sons, in the books of the bank.   E. C. Bissell factorized the bank; and on the 3d day of December, 1852, the money still standing to the credit of C. Fanton & Sons, on the books of the bank, I paid it over to Mr. Fitch, deputy sheriff, on an execution.   Mr. Bissell had given the bank an indemnity.   Mr. Bissell came to the bank and enquired about the money, before the factorizing process.   I knew C. Fanton & Sons had failed,—had made an assignment.   It was talked about a good deal.   I knew that Lyon was assignee, and demanded the money as such, and supposed Bissell did; we spoke of it frequently; he was interested.   It was generally understood that C. Fanton & Sons had assigned, and that Lyon was the assignee."

3. Walker Bates testified that he was one of the commissioners on the estate of C. Fanton & Sons.   " The note on which Mr. Bissell took judgment was, I think, presented to, and allowed by, the commissioners."

The plaintiffs here rested their case, and the defendants moved for a non-suit.   The plaintiffs resisted the motion, but the court granted it, and ordered the case to be non-suited. The plaintiffs moved to set aside such non-suit, which the court refused to grant.   Whereupon the plaintiffs, by motion in error, brought the case before this court.

*Belden* and *Dutton* for the plaintiffs, contended,

That the replication is a full answer to the plea in bar.

1. Because an assignment, for the benefit of all the assignor's creditors, under the statute of 1828, stands on a different

footing from an ordinary sale or assignment *inter partes.* *Osborn* v. *Tuller,* 14 Conn. R., 529.

2. The assignment expressly conveyed to the trustee all the estate of the assignors, and embraced this debt against the bank.

3. Of the assignment of the debt in question to the trustee, no notice was necessary, other than lodging the assignment in the probate office, for record, which is all the notice the statute contemplates. *Peters* v. *Goodrich,* 3 Conn. R., 146. *Bolles* v. *Chauncey,* 8 Conn. R., 389. *Sigourney* v. *Munn,* 7 Conn. R., 324. *Booth* v. *Barnard,* 9 Conn. R., 286.

4. The bank knew, and Bissell, the real defendant and party in interest, knew, before the suit of foreign attachment was brought, that the assignment was made, and to whom, and for what purpose. *Bishop* v. *Holcomb,* 10 Conn. R., 444.

5. If Bissell had no positive knowledge of the terms of the assignment, he knew enough to put him on the enquiry. *Peters* v. *Goodrich,* 3 Conn. R., 146.

6. The law in ordinary assignments requires notice to the debtor within a reasonable time, and want of such notice is treated as negligence, and postpones the rights of the assignee to those equities and rights of the debtor himself, and to the subsequently acquired *bona fide* rights of creditors and purchasers. *Bishop* v. *Holcomb,* 10 Conn. R., 444. In this case, the trustee gave notice and made demand, as soon as he had knowledge of the debt, and until there was knowledge, there could be no negligence.

*Butler & Carter* and *Ferry* for the defendants, contended,

That the replication admits the truth of the plea in bar, and with the evidence is no answer to it.

1. The bank was served with process of foreign attachment, before they had notice of an assignment of the *chose* in action. The statute, which is imperative and penal, made it the duty of the bank to hold the money to respond to the judgment. Stat. 1849, tit. i., ch. 1, § 230, 232.

2. To perfect the assignment of a *chose* in action, notice to

the debtor is indispensable. *Van Buskirk* v. *Hartford Fire Insurance Company.* 14 Conn. R., 141.

The assignee does not take a legal interest in, nor hold by a legal title, but by an equitable title, the equitable interest subsisting at the time of notice given to the debtor. The equitable and moral obligation of the debtor to pay the assignee is imposed by the notice. Without such notice there is no obligation, and the notice must be actual and specific. Parsons on Contracts, 198.

The statute of 1828 did not alter the law in these respects, in relation to assignments for the benefit of creditors. The intention of the legislature was, thereby, to make regulations for the protection of creditors as against the assignee, and prevent fraudulent assignments. They did not intend to affect the legal rights, or duties, of the debtors of the assignor. *Dutton* v. *The Connecticut Bank*, 13 Conn. R., 493. This point was raised in *Peck* v. *Whiting*, and disregarded by the court. From the nature of the case, too, the assignment could not be notice. Assignments may, and very often do, embrace only a part of the assignor's estate.

It does not appear that the bank, or any officer of it, had casual notice before the foreign attachment, of any assignment at all. But if they had, casual notice is not sufficient to charge them with an obligation on which an action, like the present one, will lie.

3. Whether Bissell had notice of the assignment or not, and how it would affect his right to retain the money in question, if equitably claimed of him by the assignee, or whether he presented his claim to the commissioners or not, are not questions properly arising in this case. In the absence of such notice of the assignment before foreign attachment, as the law requires, or any injunction at the suit of the assignee to protect them from paying, they were bound to pay upon demand of the officer, with the execution, and must be protected.

4. In point of fact, Bissell had no notice before the foreign

attachment. After demand made, he had, but not till then. Nor does it appear that there was even a rumor of it in the town where the bank was located, until Lyon appeared to demand the money, and made "great excitement about it." No witness testified that the character of the assignment, whether partial or general, was talked about, or that Bissell knew it. Nor can Bissell be estopped by the presentation of his claim to the commissioners. He was entitled to the several remedies, although but one satisfaction, and when the execution was satisfied, the assignee could recover back any dividend paid to him.

STORRS, J. We do not consider it necessary to determine whether, in the case of an assignment, made under the act respecting the settlement of insolvent estates assigned for the benefit of creditors, originally passed in 1828, (Rev. Stat., 1849, tit. xiv., chap. 4,) a notice of such assignment is necessary, in order to perfect it against either the debtors, or creditors, or subsequent assignees of such debtor ; nor in the case of an ordinary assignment, the effect upon a debtor of the assignor, of a notice of the assignment to a creditor of the assignor, previous to the factorizing of such debtor, by such creditor under our foreign attachment act; for if the assignment of the plaintiffs, in the present case, is to be considered as standing only on the ground of an ordinary assignment, it is clear, by the uniform course of our decisions, that if the defendants had notice of the assignment of a debt, due from them to the plaintiffs, before the copy of the factorizing process in favor of Bissell was left with them in service, or if Lyon, the assignee, within a reasonable time after the assignment to him, gave to the defendants notice thereof, the assignment vested in the assignee the equitable title to said debt, so that it could not, as against the assignee, either be lawfully paid to the assignor by the debtor, or factorized in his hands, by any of the creditors of said assignor. We are of opinion that the evidence adduced by the plaintiff, as it

is reported to us, not only conduced to prove, *prima facie*, that the defendants had knowledge of the assignment in this case, when the copy of Bissell's writ was left with them in service ; but that the assignor also gave them notice of the assignment within a reasonable time ; and that indeed the proof on these points was so strong that, if they had been submitted to the jury, and they had found a verdict in favor of the defendants, we should have felt bound to grant a new trial on the ground that it was against the evidence.    That the defendants had knowledge of this assignment, before they were factorized by Bissell, is most clearly proved by the cashier of the defendants, who testified that, before the service of the factorizing process, he knew of the failure of the plaintiffs, and that they had assigned their property to Lyon, which he must have understood to be a general assignment, and of course including the debt here in question, and that the failure and assignment was then a matter of public notoriety.    The evidence is clear, also, to show that Lyon notified the defendants of the assignment within a reasonable time.    There was no proof or claim of any unnecessary delay on his part, in giving them such notice, after he discovered their indebtedness to the plaintiffs.    Nor did the evidence show that he was chargeable with negligence in not making that discovery sooner.    Although the books and papers of the plaintiffs, to which he would naturally look for information as to the debts due to them, would probably have apprised him of a debt due from the defendants, arising from an ordinary deposit of money in their bank to the credit of the plaintiffs, that would not be the case with respect to a debt of the peculiar character of the one in question, which arose from their placing a sum of money in the bank, for the special purpose only of its being applied to the payment of a note, which was expected to be presented on the same day for payment, but which happened not to be wanted for that purpose.    This sum would not then be credited to the plaintiff on the books of the bank, and it appears

that it was not, until nearly two months afterwards. There was no proof that the assignee had any personal knowledge of any of the business transactions of the plaintiffs, or any particular means of knowledge as to the debt in question. It is to be considered, also, that he, as well as the plaintiffs, resided at a considerable distance from the defendants' place of business, and in another town. On this evidence, which there was nothing to weaken, we think that the assignee did all in this respect that could reasonably be required of him.

We are of opinion, therefore, that the plaintiffs were entitled to have the evidence submitted to the jury on these questions, and that the superior court erred in refusing to set aside the non-suit which had been ordered in the case.

The judgment complained of is reversed.

In this opinion the other judges concurred, except HINMAN, J., who was disqualified.

Judgment reversed.